## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**VICKI HOVEY,**                                    Chapter 13
     Debtor                                    Case No. 12-17363-JNF


~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**VICKI HOVEY and JOE DURSO**,                    Adv. Pro. No. 12-1244
     Plaintiffs

v.

**VALE REALTY TRUST and**
**ALBERT M. PRICE**
     Defendants
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### MEMORANDUM

## I. INTRODUCTION

The matters before the Court are: (1) the "Motion of Albert M. Price, Trustee of Vale

Realty Trust for Relief from Stay or, in the Alternative, to Dismiss Case with Prejudice and

Enjoin Debtor from Being a Debtor Under Any Chapter in Any Bankruptcy Court for 365

Days Due to Debtor's Bad Faith and Serial Filings of Chapter 13 Petitions" (the "Motion for

Relief from Stay") filed by Albert M. Price, Trustee of Vale Realty Trust (jointly, "Price");

2) the "Motion to Extend the Automatic Stay Past 30 Days for All Creditors" filed by Vicki

Hovey (the "Debtor" or "Hovey"); 3) the "Emergency Motion to Dismiss Price Request for

Relief from Stay [sic]" filed by the Debtor, which the Court shall construe as an objection

1

to the Motion for Relief from Stay; and  4) the "Emergency Motion for Violation of Automatic Stay and Creditor Misconduct [sic]" (the "Stay Violation Motion") filed by the Debtor and Joe Durso ("Durso"), the Debtor's common law spouse and a debtor in Case No. 12-10497-JNF, a Chapter 13 case which the Court dismissed on May 22, 2012.   On September 19, 2012, Price, who is the trustee of a trust which  is the landlord with respect to a Standard Residential Lease, dated on or about November 2011, executed by Hovey and Durso for the premises located at 372 Kingstown Way, Duxbury, Massachusetts (the "Duxbury property"), filed the Motion for Relief from Stay.  Price seeks relief from the automatic stay for cause to proceed with summary process proceedings against the Debtor and Durso in the Massachusetts Southeast Housing Court because the Debtor has no plan in prospect. Price also seeks dismissal of the Debtor's case with prejudice due to prejudicial delay and her bad faith in filing the instant case following a series of prior bankruptcy filings by the Debtor and Durso.[1]

The Debtor through her "Motion to Extend the Automatic Stay Past 30 Days for All Creditors," (the "Motion to Extend the Stay") which she filed on September 19, 2012, seeks to continue the automatic stay with respect to all creditors pursuant to 11 U.S.C. § 362(c)(3) in light of a prior Chapter 13 case which was dismissed within a year of the commencement of the instant case.  Price opposes the Motion to Extend the Stay. Additionally, through her

---

[1] Price's prayers in the Motion for Relief appear to limit his request to dismissal of the case. Because of the caption of the Motion for Relief and the introductory paragraph of the motion, the Court construes the Motion for Relief as a request for relief from the stay to proceed with the summary process action or, alternatively, to dismiss the case.

"Emergency Motion to Dismiss Price Request for Relief from Stay," which she filed on September 24, 2012, the Debtor objects to the Motion for Relief from Stay.

Finally, through her Stay Violation Motion, which the Debtor and Durso filed in Adversary Proceeding No. 12-1244 (the "Adversary Proceeding") on October 1, 2012, and later supplemented on October 11, 2012, the Debtor and Durso seek damages for Price's alleged willful violation of the automatic stay resulting from his continuing eviction proceedings against them and in "forcing your Debtor/Plaintiffs into Plymouth Court" while aware of the Debtor's pending bankruptcy case.[2]

At the Debtor's request, the Court, on October 12, 2012 scheduled an evidentiary hearing with respect to the Motion for Relief from Stay and the Motion to Extend the Automatic Stay.  The Court conducted evidentiary hearings with respect to those Motions over a three day period beginning on October 17, 2012 and ending on November 20, 2012. The Court also conducted nonevidentiary hearings on those dates with respect to the Stay Violation Motion.  A total of seven witnesses testified, consisting of the Debtor, Durso, Price, Cindy Hiller, an employee of Price, Donna Wood, Price's real estate rental agent and Attorneys Richard Serkey ("Attorney Serkey") and Martha Awiszus who represent Price in the summary process action and in the bankruptcy case.  Twenty exhibits were introduced into evidence.  Based upon the documentary and testimonial evidence adduced at the evidentiary hearings, as well as the entire record of proceedings in the Debtor's case,

---

[2] The parties also filed a number of affidavits in support of, and supplements and responses to the above listed Motions.

3

the Adversary Proceeding and Durso's prior Chapter 13 case,[3] the Court now makes the

following findings of fact and conclusions of law pursuant to Fed. Bankr. P. 7052.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Duxbury property is owned by Vale Realty Trust (the "Trust") of which Price,

a periodontist, is the Trustee. The property consists of two residential apartment units, a

basement and a detached garage.  In early November of 2011, Hovey and Durso negotiated

with Price's representative, Donna Wood ("Wood"), a real estate broker with the Duxbury

office of Macdonald, Wood and Sotheby's International Realty with whom Price had listed

the Duxbury property for rent.   Hovey and Durso (jointly, the "tenants") executed a

Standard Residential Lease on November 3, 2011 which was drafted by Wood.   As

discussed further below, a revised version of the lease was later executed by Price alone

which contained a more restrictive definition of the term "Premises" than the lease

executed by Hovey and Durso. A dispute then arose between the parties regarding what

portion of the Duxbury property the tenants were entitled to use. The Debtor and Durso

stopped making rent payments to Price, claiming they were not obligated to pay rent due

to Price's breach of the lease they signed.

On January 10, 2012, Price sent a Notice to Quit to the tenants for nonpayment of

rent.  On January 24, 2012, Durso filed pro se a Chapter 13 case in this Court which was

dismissed  with  prejudice  on  May  22,  2012.   Durso  filed  several  motions  to  reconsider

---

[3] The Court may take judicial notice of its docket. *See* <u>In re Mailman Steam
Carpet Cleaning Corp.</u>, 196 F.3d 1, 8 (1st Cir.1999).

dismissal of his case and, notably, provided a purported "Notice of Renewal" with respect to the lease as an exhibit to his Motion to Reconsider filed on July 26, 2012 (Doc. No. 124 filed in Case No. 12-10497-JNF).  This Notice of Renewal was dated April 4, 2012 and bears only the signature of Durso.

On or about June 6, 2012, Price initiated summary process proceedings against Hovey and Durso in the Massachusetts Southeast Housing Court (the "Eviction Action"). Threatened with possible eviction, the Debtor filed two bankruptcy cases before this Court, having previously also filed three cases in the Eastern District of Virginia since 2010.[4]  On July 19, 2012, the Debtor commenced Chapter 13 Case No. 12-16083-JNF (the "First Massachusetts Case") one day earlier than permitted by the order of the Bankruptcy Court for the Eastern District of Virginia which dismissed her immediately prior case , Chapter 13 Case No. 11-34114-KRH, with prejudice on July 21, 2011 for a period of 365 days. This Court dismissed the First Massachusetts Case on August 10, 2012 for the Debtor's failure to file a certificate of credit counseling in compliance with 11 U.S.C. § 109(h) and the failure to provide proof of liability insurance. The Debtor filed the instant case pro se on September 7, 2012, and shortly afterwards, on September 19, 2012, she filed the Motion to

---

[4] The Debtor's prior bankruptcy filings in Virginia include: (1) Chapter 13 Case No. 11-34114-KRH filed by the Debtor on June 23, 2011 in the Eastern District of Virginia and dismissed with prejudice by that Court on July 21, 2011 for a period of 365 days;  (2) Chapter 13 Case No. 11-32550-DOT filed by the Debtor on April 15, 2011 in the Eastern District of Virginia and dismissed by that Court on June 6, 2011; and (3) Chapter 13 Case No. 10-30897-KRH filed by the Debtor on February 12, 2010 in the Eastern District of Virginia and dismissed by that Court with prejudice on August 30, 2010. Durso also filed three prior bankruptcy cases in the Eastern District of Virginia, the latest having been dismissed on August 1, 2011.

Extend the Stay.  On the same date, Price filed the Motion for Relief from the Stay.

On September 20, 2012, the Debtor filed her Chapter 13 plan which provides for payments to the Chapter 13 Trustee in the amount of $133.89 per month over a term of 60 months.  Through her plan, the Debtor proposes to pay a secured vehicle loan in the sum of $3,000, and a priority claim of "DCSE" in the amount of $1,600 and to assume the lease with Price.  The Debtor provides for no dividend to general unsecured creditors in her plan. Both the Chapter 13 Trustee and the Debtor's vehicle lien creditor have objected to confirmation.  The Trustee asserts, *inter alia*, that the plan is not feasible as the Debtor's Schedule J - Current Expenditures of Individual Debtor(s) reflects monthly net income of zero.  The Debtor filed responses with respect to both confirmation objections and represented that she would amend her Schedule J and plan to address the issues raised by the Trustee and the vehicle lien creditor.

On September 24, 2012, the Debtor and Durso filed a Complaint against Price and the Trust, alleging breach of contract and fraud and seeking a declaratory judgment as well as damages, fees and costs.  On October 1, 2012, the Debtor and Durso filed the Stay Violation Motion which they later supplemented on October 11, 2012, alleging that Price violated the automatic stay for continuing the Eviction Action against them despite awareness of the Debtor's bankruptcy filing.[5]  They assert that they are entitled to damages for lost wages and anxiety as well as costs.  In addition, on October 11, 2012, the Debtor and

---

[5] The caption of the Stay Violation Motion appears to include Price's attorneys and their law firm as defendants, although they are not defendants in the Adversary Proceeding.

6

Durso sought leave to amend the Complaint to add Wood as a defendant and to add "more claims against Price and all Defendants" (the "Motion to Amend").  On October 24, 2012, Price, individually and as trustee of the Trust, filed Motions to Dismiss the Complaint and, curiously, an Answer to the Complaint in which he asserted counterclaims for breach of contract, fraud and breach of the covenant of good faith and fair dealing.  The Court scheduled a number of nonevidentiary hearings with respect to the Motion for Relief from Stay, the Motion to Extend the Stay and the Stay Violation Motion.   On October 12, 2012, at the Debtor's request, the Court scheduled the Motion for Relief from Stay and the Motion to Extend the Stay for evidentiary hearing to determine whether the Debtor and Durso validly effected an extension of the term of the lease.  The Court also scheduled the Stay Violation Motion for nonevidentiary hearing at the same time as the other motions.

## III. FACTS ADDUCED AT THE EVIDENTIARY HEARINGS

The Duxbury property includes two apartment units and a basement.  There is also a detached garage located on the property, which, as discussed below, is the subject of much of the dispute between the parties.  Prior to the execution of the lease by Hovey and Durso, Price gave them a tour of the Duxbury property.  According to Price, he showed them both apartment units and offered to rent them either the first floor unit and half (right side) of the basement for $1,650 per month or the second floor unit and the left side of the basement for $1,150 per month.  Following the tour, Price testified, Hovey and Durso orally agreed to rent the first floor unit for $1,650 per month.  At some point, perhaps at this initial

meeting,[6] Hovey and Durso asked Price about the use of the garage for storage.  Price maintains that he did not want them to have access to the garage because of "liability" issues and it was never part of the offering. He testified that he told them the matter was not worth discussing because "[i]t's just not going to happen."

Following Hovey and Durso's acceptance of Price's offer to rent them the first floor unit, Price testified that he told them to contact Wood directly to formalize the arrangement.  According to Price, Hovey and Durso arrived at Wood's office on November 3, 2011 seeking, he believed, to rent only the first floor unit and the right side of the basement of the Duxbury property for $1,650 per month. Wood prepared a form of lease which described the rented "Premises" as "372 Kingstown Way, Duxbury, MA 02332." The lease also contained an erroneous identification of the tenants as Vicky Dursa and Joseph Dursa (the "First Lease").

Wood phoned Price at work on November 3, 2011 to let him know that Hovey and Durso were in her office and were anxious to sign a lease and move in.  Despite not having a copy of the First Lease to review, Price agreed on the phone with Wood to allow Hovey and Durso to move in.  He planned to resolve any issues he might have two days later on November 5, 2011 when he was to meet with Wood.  Wood presented the First Lease, which was for a six month term, to Hovey and Durso which they signed on November 3, 2011, while at her office.  They tendered cash to her in the amount of $4,850, representing

---

[6] Price's testimony was unclear on the date of this conversation.

8

the amount of first and last month's rent and a security deposit.[7]  At some point on that

day, Wood also gave Hovey and Durso keys to the first floor unit and a written receipt for

the funds which, in part, provided: "If the Landlord does not sign the lease, this money

shall be returned forthwith to the Durso's. [sic]"

On November 5, 2011, Price met with Wood at which time he reviewed the First

Lease.  Price testified he was concerned that the definition of the term "Premises" was not

limited to the first floor unit and use of the right side of the basement.  He said he believed

he needed to ". . . define things so there won't be any issues of what we agreed to . . . . the

$1,650 for the first floor."  Hovey and Durso executed either duplicate originals of the First

Lease or Wood maintained executed copies of it.  At Price's direction, Wood made

typewritten changes to one of those originals or copies and defined the "Premises" as the

"first floor apartment, right side basement . . ."  She also revised the renewal provision of

Section 22 and corrected the spelling of the tenants' names as instructed by Price.  Price

signed it on that date, November 5, 2011, next to the tenants' signatures which were dated

November 3, 2011 (the "Second Lease").

Wood unilaterally altered the terms of an executed lease without the tenants'

knowledge and gave it to Price to sign.  Price testified that it was his expectation that Wood

would forward the "corrected" Second Lease to the tenants for their execution.  Wood

---

[7] This amount is $100 less than three month's rent of $1,650. Price testified that
Durso later paid him the $100 shortfall when he visited the tenants on November 5,
2011.  In other words, the tenants tendered an amount equal to three months of rent at
the verbally agreed to rate of $1,650 for the first floor unit.

testified that she had no recollection that she delivered the Second Lease to Hovey or

Durso, and that her memory was "fuzzy" about how they eventually came to obtain it.

Both versions of the lease contained an identical unmodified provision in Section 7  which

provided that the Landlord was to deliver full possession of the "Premises" to the tenants

and that " . . . TENANT shall not be liable for any rent until possession is delivered."

Neither version of the lease contained any reference to the garage.

On November 27, 2011, Durso sent Price a letter by certified mail which he received

on December 9, 2011.  The letter, in part, provided:

> Enclosed is a copy of the offer/lease you and your agent, Donna Wood,
> presented me.  I signed numerous copies (4), of the lease . . . To date, I have
> not received a signature from you or your agent.  Please sign the copy
> enclosed and forward a copy back to me.

Price testified that after receiving the letter he was concerned that Wood had not given

Hovey and Durso the Second Lease.  Durso obtained the Second Lease at some point,

although Wood could not recall how, prompting him to send a second letter to Price, dated

December 1, 2011, which, in part, provided:

> . . . after receiving your signed copy of the lease, from your agent, I have
> noticed you or your agent made several changes throughout the lease and
> attached my signature page to your new copy.  This letter serves as notice to
> request our monies back plus expenses . . . If we can resolve this matter,
> please disregard this notice.

Price testified that following his receipt of this letter and due to the passage of time, he felt

obligated to execute the original First Lease.  He affixed his signature to the First Lease

which the tenants had already signed, dating it November 30, 2011.  He returned the First

Lease to the tenants at their prior address by letter dated December 16, 2011.[8]  The letter,

in part, provided: "Enclosed find a copy of lease you signed with Realtor, Donna Wood on

11-3-11 . . . Since there was some objection to any changes in what you had signed, I crossed

it out and initialed with date."

Price testified that he allowed the tenants access to the second floor unit and the

entire basement at some point.  Notwithstanding his execution of the First Lease with the

broad description of the "Premises," Price credibly testified that he still believed that he

was only obligated to lease them the first floor unit and a portion of the basement and that

he could exclude their use of the garage.   He explained that this understanding of the

"Premises" was the original "understood agreement" between the parties.  Indeed, Price

testified that "The garage is detached [from the property] by a breezeway.  It's not part of

the house or part of the main premises."   Wood supported Price's view when she

recounted her November 3, 2011 meeting with Hovey and Price:

Q:    What did you talk about? . . .

A:    We talked about the terms that it would be the first floor which would
      include half the basement and that the garage would not be included.

Q:    And what was their response to your comments regarding a description of
      the premises as you've just testified?

_____

[8] It is unclear why Price sent the executed First Lease to a prior address as he was
exchanging text messages with the tenants at that time, and they were not unreachable
at the Duxbury premises.  Notably, the First Lease is the one attached by Price to his
Motion for Relief from Stay and to his proof of claim in the Debtor's case as well as
Durso's prior Chapter 13 case.

A:     The only comments I recall are that they seem to want to rent the garage but that Dr. Price had made it clear that that was not part of the rental situation.

                                    ***

Q:     Okay. But is your memory clear, Ms. Wood, that at the time you met with [Durso and Hovey] that you described the premises to them as consisting of the first floor and half the basement and no garage?

A:     I am very clear on that.

She added that she only gave them keys to the first floor unit, and they never contacted her for keys to the other unit.

Durso testified to the contrary, stating that Price told him at their first meeting that they could have access to the garage for their handyman business. Indeed, Hovey testified that access to the garage was the "main reason we rented the house." She also testified that they had been denied access to the garage because Price stored his personal property there. She indicated that she and Durso needed the garage space to store their tools and work in process for their business, and that they have suffered damages as a result of their inability to use the space. Hovey insisted that the provisions of the First Lease, which did not expressly exclude use of the garage, entitled her and Durso to use the "full premises."

At some point, after the exchange of the above letters, a dispute arose between the parties concerning the use of the garage. Price testified that in early January, 2012, all communications from the tenants ceased and that he was unable to reach them at the premises or by phone other than through the exchange of some text messages which yielded no resolution to the parties' dispute. The tenants had not paid December or

January rent or their electric bill so Price sent them a Notice to Quit, through counsel, on January 10, 2012.

In both versions of the lease, Section 22 provided that: "The Tenants may extend the lease for 12 months with notice to the Landlord to be given no later than April 5, 2012." The Debtor and Durso testified that they sent a notice of Lease renewal dated April 4, 2012, to Price in a US Postal Service priority mail envelope and delivered a copy by hand as well to Wood and Attorney Serkey at their offices. Although Price agrees that he received the envelope at his office on April 6, 2012, he and his assistant, Cindy Hiller, credibly testified that the envelope did not contain a notice of renewal and was, in fact, empty. Price testified that he never received a notice of renewal from Hovey or Durso.

The Debtor made countless unsuccessful attempts to impeach Price's testimony on this point. She introduced into evidence a purported notice of renewal which she and Durso executed on April 4, 2012. This notice is different from the notice of renewal of the same date executed only by Durso which he submitted as an exhibit in his bankruptcy case. When questioned by the Court about the discrepancy in the documents, Durso was unable to explain; indeed his testimony made no sense. There was no credible evidence that Price, Wood or Attorney Serkey received any form of lease renewal from Hovey or Durso.

In an apparent reference to the Eviction Action, Durso also testified that he has missed a substantial amount of work because Price "keeps dragging me into Plymouth [Court]." Although not under oath, Attorney Serkey represented to this Court that the Housing Court had been continuing the Eviction Action on its calendar on a bi-weekly

13

basis at his suggestion pending resolution of the motions in the bankruptcy case.

## IV. DISCUSSION

A. <u>The Motion for Relief from Stay-Request to Continue the Eviction Action</u>

Central to the determination of the Motion for Relief from Stay is whether a valid lease existed between the parties and, if so, whether it was extended.  There can be no dispute that the First Lease was the valid lease between the parties.  Hovey and Durso never signed the Second Lease, and it is a legal nullity.  Price would appear to concede this fact as he attached the First Lease to his pleadings and his proof of claim.  Although Hovey maintains that the identification of the leased premises as "372 Kingstown Way, Duxbury, MA" necessarily includes the garage and the upstairs unit, the Court finds that the street address description is not free of ambiguity given that the property was a multi-family dwelling and the garage was detached from the main house.

In <u>Rogers Street, LLC v. MBA-Rogers Street LLC</u>, 26 Mass. L. Rptr. 249, 2009 WL 3644730  (Mass. Super. Aug. 19, 2009), the court set forth the law applicable to landlord tenant relations.  It stated:

> The relationship between a landlord and a tenant is a contractual one based on the terms of the lease executed between the parties. <u>Williams v. Seder</u>, 306 Mass. 134, 136, 27 N.E.2d 708 (1940). "Interpretation of language in a written contract is a question of law for the court, and if the words are plain and free of ambiguity, they must be construed in accordance with their ordinary and usual sense." <u>Massachusetts Mun. Wholesale Elec. Co. v. City of Springfield</u>, 49 Mass.App.Ct. 108, 111, 726 N.E.2d 973 (2000). The Court is not, however, required to read a contract in a vacuum, or to ignore the context in which it was created. "Contract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." <u>Starr</u>

v. Fordham, 420 Mass. 178, 190, 648 N.E.2d 1261 (1995) (internal quotations and citations omitted). "A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." County of Barnstable v. American Fin. Corp., 51 Mass.App.Ct. 213, 215, 744 N.E.2d 1107 (2001). *See also* Suffolk Constr. Co., Inc. v. Lanco Scaffolding, Inc., 47 Mass.App.Ct. 726, 729, 716 N.E.2d 130 (1999) (contract language ambiguous where "an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken").

When contract terms are ambiguous, extrinsic evidence is a proper source for interpretation. Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496, 678 N.E.2d 180 (1997). In that case, "preliminary negotiations, the conduct of the parties, and interviews between them after the contract is executed are relevant matters and are admissible in evidence, not to vary or enlarge the agreement, but to define the meaning of the terms the parties employ." Rizzo v. Cunningham, 303 Mass. 16, 21, 20 N.E.2d 471 (1939). *See also* USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116, 546 N.E.2d 888 (1989) ( "[e]xtrinsic evidence bearing upon the background and purpose of the parties, as well as their understanding of the meaning of particular language used in the contract, may be considered both in the construction of ambiguous contract language and in resolving uncertainties in applying the terms of the written contract to the subject matter").

2009 WL 3644730 at *4. *See also* Citation Ins. Co. v. Gomez, 426 Mass. 379, 381, 688 N.E.2d 951 (1998)("A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.").

The evidence adduced at the evidentiary hearings, unfortunately, did not resolve the ambiguity because both parties gave different versions of their preliminary negotiations and their purposes in entering into the lease. Hovey and Durso testified that use of the garage was the "main reason" they rented the property and that Price agreed to their use of it at their initial meeting on November 3, 2011 while Price testified that he did not

15

consider it part of the main house and it was never part of the offering.  The other extrinsic

evidence introduced undermined the parties' own accounts and positions.  On the one

hand, Hovey and Durso claimed to have rented the entire property, yet they made initial

payments of rent attributable to one but not both units.  On the other hand, Price circulated

the revised Second Lease because he believed he needed to "define things so there won't

be any issues of what we agreed to."

Notwithstanding the ambiguity, the Court finds that the second issue, i.e., whether

the First Lease was properly extended, is dispositive for purposes of the first request in the

Motion for Relief from Stay.  Here the credible evidence was that the First Lease was not

renewed.  Unlike the description of the "Premises" which is ambiguous, Paragraph 22

governing the extension of the lease, is in no way ambiguous. It required the tenants to give

notice to Price no later than April 5, 2012.  The Court finds that based on the credible

evidence, neither the Debtor nor Durso caused an effective notice to be delivered to Price

by that date.  Accordingly, the term of the First Lease expired prepetition on May 3, 2012.

Section 362(d)(1) of the Bankruptcy Code provides that the Court shall grant relief

from the automatic stay "for cause, including the lack of adequate protection of an interest

in property...." 11 U.S.C. § 362(d)(1).  In <u>Grella v. Salem Five Cent Sav. Bank</u>, 42 F.3d 26 (1st

Cir. 1994), the United States Court of Appeals for the First Circuit considered the statutory

language and legislative history of 11 U.S.C. § 362.  Noting that "the hearing on a motion

for relief from stay is meant to be a summary proceeding, and the statute requires the

bankruptcy court's action to be quick," <u>id.</u> at 31. It stated:

16

The relief from stay procedures established by the Bankruptcy Rules also point to the limited scope of the hearing. Relief from the stay is obtained by a simple motion, Fed. R. Bankr. P. 4001, and it is a "contested matter," rather than an adversary proceeding. Fed.R.Bankr.P. 9014. *See* Advisory Committee Note to Fed. R. Bankr. P. 7001 ("[R]equests for relief from the automatic stay do not commence an adversary proceeding."). In contrast, all actions to determine the validity of a lien, such as a preference action under § 547, require full adjudication on verified pleadings, and must be litigated in adversary proceedings. Fed. R. Bankr. P. 7001. To allow a relief from stay hearing to become any more extensive than a quick determination of whether a creditor has a colorable claim would turn the hearing into a fullscale adversary lawsuit, In re Gellert, 55 B.R. at 974, and would be inconsistent with this procedural scheme.

Grella, 42 F.3d at 33. Because the First Lease has terminated, the Court finds that Price has set forth a colorable claim warranting relief from stay for cause. Accordingly, the Motion for Relief is granted, in part, to permit Price to continue with the Eviction Action against the Debtor and Durso, as a codebtor pursuant to 11 U.S.C. § 1301, for the sole purpose of evicting them from and regaining possession of the Duxbury property.

B. The Motion for Relief from Stay-Request to Dismiss the Case

Section 1307(c) of the Bankruptcy Code provides, in pertinent part, the following:

Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including–

(1) unreasonable delay by the debtor that is prejudicial to creditors . . .

11 U.S.C. § 1307(c)(1). Price asserts that the Debtor's prior filings indicate a pattern of failure to make required filings and/or payments or propose a feasible plan in good faith

17

and that the purpose of her prior filings was to "avail herself of the protection afforded by the automatic stay to avoid the Landlord's eviction trial . . ." This, Price contends, has been prejudicial to his interests. Additionally, he requests that dismissal be with prejudice for a period of between 180 to 365 days because the Debtor filed the First Massachusetts Bankruptcy Case in violation of the order of the United States Bankruptcy Court for the Eastern District of Virginia.

In In re O'Neal, No. 10-22931-JNF, 2011 WL 2117017 (Bankr. D. Mass. May 23, 2011), this Court discussed the standard for dismissal under 11 U.S.C. § 1307. It stated:

> Lack of good faith, or bad faith, is not specifically listed as a ground for dismissal [in Section 1307(c)], although the Court must find that the plan has been proposed in good faith and that the action of the debtor in filing the petition was in good faith to confirm a Chapter 13 plan. *See* 11 U.S.C. § 1129(a)(3) and (7). Nevertheless, the United States Supreme Court has recognized that bad faith may constitute cause for dismissal or conversion. *See* Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 379, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). Additionally, the United States Bankruptcy Appellate Panel for the First Circuit has observed "it is well established that lack of good faith (or bad faith) is 'cause' for dismissal or conversion of a Chapter 13 case under § 1307(c)." Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211 (B.A.P. 1st Cir.2005) (citing In re Cabral, 285 B.R. 563, 573 B.A.P. 1st Cir.2002); Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir.1999); Ho v. Dowell ( In re Ho), 274 B.R. 867, 877 (B.A.P. 9th Cir.2002); In re Dicey, 312 B.R. 456, 458 (Bankr.D.N.H.2004); In re Fleury, 294 B.R. 1, 5 (Bankr.D.Mass.2003); and In re Virden, 279 B.R. 401, 407 (Bankr.D.Mass.2002)).

2011 WL 2117017 at *4. While the Debtor and Durso have filed several bankruptcy cases since 2010, the Court does not find bad faith in the filing of this case which would warrant dismissal. There was, and continues to be, a legitimate question concerning the scope of

18

the leased premises in the First Lease, and the Debtor filed this case to avoid eviction proceedings based on her belief that the lease had been breached by Price.  Indeed, Section 7 of the First Lease provides that: " . . .  Tenant shall not be liable for any rent until possession [of the Premises] is delivered."  Moreover, Price's ability to continue the Eviction Action against the Debtor and Durso now ameliorates any prejudicial delay he may have suffered as a result of the Debtor's bankruptcy filing.   Additionally, notwithstanding the prepetition termination of the First Lease and the Debtor's current negative monthly income, she may have claims against Price, further discussed below, and/or Wood through which she can fund a plan of reorganization.  Price's request to dismiss the Debtor's bankruptcy case is denied, and his request for dismissal with prejudice is moot.

C. <u>The Motion to Extend the Stay</u>

Section 362(c)(3) of the Bankruptcy Code provides, in relevant part:

(3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter . . . 13, and if a single or joint case of the debtor was pending within the preceding 1–year period but was dismissed . . . —

(A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;

(B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30–day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; and

(C) for purposes of subparagraph (B), a case is presumptively filed not in

good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)-- . . .

(i) as to all creditors, if--
(I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;
(II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to--
(aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
(bb) provide adequate protection as ordered by the court; or
(cc) perform the terms of a plan confirmed by the court; or
(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded--

(aa) if a case under chapter 7, with a discharge; or
(bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

11 U.S.C. § 362(c)(3). As discussed above, the Court finds that the Debtor filed this case to obtain legitimate bankruptcy protection and relief in delaying an eviction action where the parties had different understandings of the scope of the leased premises due to the ambiguity in the First Lease. She has not yet, however, rebutted the presumption of bad faith as set forth in § 362(c)(3), as she has not established that this case will be concluded with a confirmed plan, *see* § 362(c)(3)(C)(i)(III)(bb), as the viability of her plan will depend on her claims against Price and Wood, rather than solely from her regular monthly income.

Accordingly, the Court grants the Motion to the Extend the Stay, subject to Price's right to

continue the Eviction Action, on an interim basis for a period of 90 days.  The Court will schedule a further hearing on the Motion to Extend the Stay.

      D. <u>The Stay Violation Motion</u>

      Although the Court did not hear evidence on the Stay Violation Motion, it appears from representations made by Attorney Serkey at the evidentiary hearing that violations of the automatic stay may have occurred through the repeated continuances of the Eviction Action for brief periods of time during the pendency of the Debtor's bankruptcy case. *See* 11 U.S.C. § 362(a)(1).  Accordingly, the Court will schedule the Stay Violation Motion for an evidentiary hearing.

## V. CONCLUSION

      The Motion for Relief from Stay is allowed, in part, to permit Price, individually and as Trustee of the Trust, to continue with the Eviction Action against the Debtor and Durso for the sole purpose of evicting them from and regaining possession of the Duxbury property. The Motion for Relief is denied to the extent Price seeks dismissal of the Debtor's case. Any claims Price may have against the Debtor for past due rent or otherwise arising from the First Lease shall be determined by this Court in the context of the Adversary Proceeding and/or Price's proof of claim.  The Debtor's Motion to Extend the Stay is allowed with respect to all creditors, subject to Price's continuation of the Eviction Action as set forth above, on an interim basis for a period of 90 days from this Memorandum.  The Court will conduct a further hearing on the Motion to Extend the Stay prior to the expiration of such 90 days.

In light of these rulings, the Court allows Hovey and Durso's Motion to Amend the complaint for the purpose of adding claims and adding Wood as a defendant, and directs them to do so within 14 days of this Memorandum.   Thereafter, the Court will issue a pretrial order.  Upon the filing of the amended complaint, Price's Motions to Dismiss will be moot.  The Debtor shall file, by December 21, 2012, amended Schedules I and J as well as an amended Chapter 13 plan which does not provide for the assumption of the First Lease with Price which has expired.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

December 14, 2012